IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| UNITED STATES, | : |
| | : |
| **Plaintiff,** | : |
| v. | : |
| | : CASE NO: 7:21-CR-036 (WLS) |
| MARCUS Q. WALDEN, | : |
| | : |
| **Defendant.** | : |
| _____ | : |

### ORDER

Before the Court is the Defendant's Motion for Rule 11(d) Evidentiary Hearing and Motion to Withdraw Guilty Plea and Proceed to Trial by Jury (Doc. 38) ("Motion to Withdraw Guilty Plea"). For the following reasons, the Motion to Withdraw Guilty Plea (Doc. 38) is **DENIED**.

**I. PROCEDURAL HISTORY AND EVIDENTIARY HEARINGS**

On August 12, 2021, the Grand Jury handed down a three count Indictment (Doc. 1) against Defendant charging: Count One: Possession of a Firearm by a Convicted Felon; Count Two: Possession with Intent to Distribute Cocaine; and Count Three Possession of a Firearm in Furtherance of a Drug Trafficking Crime.

**A.   Plea Agreement**

After discussions with Timothy Saviello, his prior counsel, Defendant agreed to enter a guilty plea, and the Court set a change of plea ("CHOP") hearing for October 12, 2021. Pursuant to the Plea Agreement, Defendant pled guilty to Count III: Possession of a Firearm in Furtherance of a Drug Trafficking Crime. (Doc. 20 § (3)(A).) The Government agreed that Counts One and Two of the Indictment would be dismissed at the sentencing hearing. (*Id.* § (4)(A).)

The Plea Agreement states that by pleading guilty, Defendant understands his range of punishment include: (a) a maximum possible sentence of life with a mandatory minimum sentence of five (5) years of imprisonment; (b) a maximum fine of $250,000 that may be imposed in addition to the term of imprisonment; (c) a term of supervised release of at least

1

five (5) years, and (d) a mandatory assessment of $100. (*Id.* § (3)(B).) Significantly, the Plea Agreement provides that Defendant acknowledges and understands that the Court is not bound by any estimate of the probable sentence range that Defendant may have received from his attorney, the Government, or the Probation Office (*Id.* § (3)(C)).

### B.     CHOP Hearing

Mr. Saviello represented Defendant at the CHOP Hearing. After being placed under oath and following the Court's explanation of the purpose of the hearing which Defendant acknowledged he understood, Defendant testified that he had the opportunity to read and review the Plea Agreement, that he had fully discussed the agreement with his attorney, and that he understood the terms of the agreement. (Doc. 42, CHOP Hrg. Tr. 8:18—25.) Pursuant to this Court's usual practice, the Court carefully reviewed the Plea Agreement with the Defendant. Particularly relevant here, the Court ensured that Defendant fully understood the potential punishment he could receive by pleading guilty, stating:

> [THE COURT:] Now, first of all, I advise you of course that this particular offense [referring to Count Three] carries a minimum mandatory sentence of five years of imprisonment *and up to a maximum of life imprisonment*. It also could carry a $250,000 fine. And also you would [be] required to pay a $100 mandatory assessment fee . . . . *Do you understand that to be the maximum possible penalty for this offense*?
>
> THE DEFENDANT: *Yes, sir*.

(*Id.* 11:8—18 (emphasis added).) The Court also confirmed that Defendant understood he would be subject to a minimum of five (5) years of supervised release as part of his sentence. (*Id.* 12:3—18.) The Court confirmed Defendant understood the Court is not bound by recommendations of any party and Defendant could not withdraw his guilty plea if the Court did not follow a particular recommendation. (*Id.* 9:2—10:7.) With respect to any estimates Defendant had received as to the range of sentencing, the Court stated:

> THE COURT: . . . [Y]our attorney may have told you what he believes your advisory guideline range will be based on what he now understands, the attorney for the government may have given you some viewpoint or others, but the fact is that no one knows with certainty at this time what your advisory guideline range will be. It might [ ] turn out to be exactly what your lawyer thinks it is, it could be longer or it could be shorter. Now, the reason for that is that the presentence investigation report that I described to you earlier has not yet been prepared and since once it's prepared you might have objections to it or the

government may have objections to it and *depending how the Court might rule that could change the advisory guideline range. Do you understand that*?

    THE DEFENDANT: *Yes, sir.*

    THE COURT: *Now, the point is, of course, for you to understand is this, if the advisory guideline range were to turn out to be different than you now expect it to be and you plead guilty, you would not be able to withdraw your plea of guilty on that basis. Do you understand that*?

    THE DEFENDANT: *Yes, sir.*

(*Id.* 23:5—24:7 (emphasis added).) Prior to accepting Defendant's guilty plea, the Court confirmed that Defendant's plea was voluntary and knowing and that Defendant was not relying on *any* promises or assurances made by anyone that were not within the terms of the Plea Agreement or discussed at the hearing:

    THE COURT: All right. So do you understand . . . what your rights would result in being and how the case would proceed if you plead guilty to Count Three?

    THE DEFENDANT: Yes, sir.

    THE COURT: *Any question at all about it or anything that you have in mind about it I have not[1] specifically addressed*?

    THE DEFENDANT: *No, sir.*

    THE COURT: Understanding your right to continue to plead not guilty or to change your plea to one of guilty to Court [sic] Three pursuant to the plea agreement, what plea do you wish to offer to Count Three; guilty or not guilty?

    THE DEFENDANT: Guilty.

    THE COURT: Do you offer your plea of guilty to Count Three *freely and voluntarily and of your own free will*?

    THE DEFENDANT: *Yes, sir.*

    THE COURT: Has anyone forced you, coerced, or threatened you in any way to get you to plead guilty to Count Three?

    THE DEFENDANT: No, sir.

    THE COURT: *And other than what's in the written plea agreement and what has been stated to the Court on the record today, has anyone at any time made any other promise or assurance to you to get you to plead guilty to Court [sic] Three?*

    THE DEFENDANT: *No, sir.*

---

[1] While the words "have not" were omitted from the written transcript, the Court reviewed the recording of the hearing and confirmed that the transcript, as amended above, is correct. (*See* Audio of CHOP Hrg. at 2:43:20.)

3

> THE COURT: *And lastly, do you offer your plea of guilty to Court [sic] Three because you believe you are in fact guilty of Court [sic] Three?*
>
> THE DEFENDANT: *Yes, sir.*
>
> THE COURT: All right. The Court finds the plea is freely, voluntarily, and knowingly offered. Therefore if you wish to plead guilty to Count Three as indicated, Mr. Walden, you may sign the form that has been prepared for that purpose.

(*Id.* 35:18—37:5 (emphasis added).) After accepting Defendant's guilty plea, the sentencing hearing was set for January 20, 2022.

### C. Presentence Investigation Report, Continuance of Sentencing, and Change of Counsel

On December 16, 2021, the draft Presentence Investigation Report (Doc. 24) ("PSR") was filed. According to the PSR, Defendant is a Career Offender and his advisory guideline sentencing range is 262 to 327 months. (Doc. 24 ¶ 96.) Defendant's request for an extension of time to object to the PSR was granted (Doc. 26). An objection to the PSR was not filed, but orders were entered granting motions continuing the sentencing hearing (Doc. 28), allowing Mr. Saviello to withdraw as counsel (Doc. 33), and appointing Oliver Register as Defendant's Counsel (Doc. 34).

### D. Motion to Withdraw Guilty Plea and Hearing

On October 17, 2022, Mr. Register filed the pending Motion to Withdraw Guilty Plea in which Defendant states "that his entry of a guilty plea was based upon the advice and assurances that were made to him by his then attorney regarding the applicability of an enhancement as a career offender. Defendant contends that this advice of counsel precipitated his entry of a guilty plea." (Doc. 38 at 2.) The Government filed a response in opposition to the motion, and the Court held an evidentiary hearing on January 11, 2023 ("MTW Hearing").

In his discussions with Defendant on and the range of punishment that Defendant could face under the U.S. Sentencing Guidelines if he pled guilty to Count Three, Mr. Saviello testified as follows:

> A. So, I've gone back and look through my file to try to refresh my recollection on the conversations that we had and the advice that I would have given him, and while I don't have perfect recall, this is basically what I remember; that, when I first got Mr. Walden's case there was concern that he was either going to be an armed career criminal under Count One under 924(e),

4

> as you mentioned, or potentially career offender. There's some difference between the two of those, so I did what I normally would do, which was go look at his criminal history, his prior convictions, in order to try to access [sic] the likelihood of either designation. And I went through that and looked at those and made my analysis. And when I went back and looked at my notes, I believed that he had an aggravated assault charge that I think was in 2016 or 2017, and I thought that that case had been dismissed. And so based upon that I didn't think there was sufficient predicates for him to qualify as a career offender, and then I advised him that if he pleaded to Count Three, that would be what we would call a straight 924(c) sentence and it would be the five-year sentence. And that was my understanding. *I know now that I was wrong in that that aggravated assault produced a conviction and that made it a predicate which arguably would have him qualify as a career offender.*
>
> Q. Okay. So I believe that, and I'm just trying to understand this, but upon your advice and counsel to Mr. Walden you indicated to him that his maximum exposure punishment-wise was going to be five years?
>
> A. Yeah, we would have talked about – as I recall we talked about the fact that the government thought he was likely going to qualify as a career offender or armed career criminal, and that's why we did the analysis, and that based upon my analysis I thought he wouldn't. *And so I'm sure we talked about the fact that that decision wouldn't come until the presentence report came and it may be that we would have to litigate that if probation thought he was a career offender.* That would be something we would have to fight about through objections to the presentence report and maybe at sentencing, but that my belief was that he didn't have the predicate, necessary predicate convictions and so would not be found to be a career offender.

(Doc. 47 Tr. MTW Hrg. 15:12—17:7 (emphasis added).) Defendant exercised his right not to testify at the hearing and no additional witnesses were called to testify.[2] At the conclusion of the MTW Hearing the Court instructed the Parties that once the transcript of the hearing was available on the record, Defendant would have fourteen days in which to file a post-hearing brief. The Government's post-hearing brief was due within fourteen days after Defendant's brief was filed. No additional briefing was scheduled. The Parties timely filed their post-hearing briefs and the Motion to Withdraw Guilty Plea is now ripe for decision.

---

[2] Defendant was informed by the Court of his right to testify in support of his Motion to Withdraw Guilty Plea. The Court recessed the hearing to allow Defendant to confer with Defense Counsel regarding Defendant's desire to testify. Counsel for Defendant thereafter informed the Court that Defendant did not wish to testify, which Defendant confirmed upon direct inquiry by the Court. Defendant's decision not to testify was knowingly, freely, and voluntarily made.

5

## II. LAW AND ANALYSIS

"A defendant may withdraw a plea of guilty . . . (2) after the court accepts the plea, but before it imposes sentence if: . . . the defendant can show a fair and just reason for requesting the withdrawal." FED. R. CRIM. P. 11(d)(2)(B). Generally, there is a "strong presumption that statements made during a plea colloquy are true." *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994). Important to note, a defendant has no absolute right to withdraw a guilty plea and bears a "heavy burden to show his statements under oath were false." *United States v. McCarty*, 99 F.3d 383, 385 (11th Cir. 1996); *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988).

"In determining whether a defendant has met this burden, a district court 'may consider the totality of the circumstances surrounding the plea,' including '(1) whether close assistance of counsel was available; (2) whether the plea was knowing and voluntary; (3) whether judicial resources would be conserved; and (4) whether the government would be prejudiced if the defendant were allowed to withdraw his plea.'" *United States v. Perez-Hernandez*, 490 F. App'x 275, 277 (11th Cir. 2012) (quoting *United States v. Buckles*, 843 F.2d 469, 471-72 (11th Cir. 1988)). A district court need not find all the four factors; if the first and second factors are found, district court does not have to give "considerable weight" to the third or fourth factors. *United States v. Gonzalez-Mercado*, 808 F.2d 796, 801 (11th Cir. 1987) (finding that because the district court found the first two factors, the third factor (judicial resources) and the fourth factor (prejudice to the government) did not need to be assessed or given "considerable weight" or "particular attention").

A plea is made knowingly and voluntarily if it is entered without coercion and with understanding of the nature of the charges and consequences of the plea. *United States v. Fuenmayor-Arevalo*, 490 F. App'x 217, 227 (11th Cir. 2012). In the event a defendant appeals the district court's ruling on a motion to withdraw a plea of guilty, it shall be subject to an abuse of discretion standard. *Medlock*, 12 F.3d at 187.

Defendant asserts that he met his burden to show a fair and just reason for the Court to allow him to withdraw his guilty plea because (a) the required close assistance of counsel was not available to him in making his decision to plead guilty and (b) without such assistance of counsel, his plea was not knowingly and voluntarily entered.

6

### A. Close Assistance of Counsel

In his post-hearing brief, Defendant asserts that Mr. Saviello, erroneously informed Defendant that an enhancement as a career offender would not apply to his case. Because of this erroneous analysis, Mr. Saviello incorrectly advised Defendant that in pleading guilty to Count Three, Defendant faced a maximum term of imprisonment of five years. Defendant contends that because Defendant relied on this erroneous advice in deciding to accept the Government's plea offer, he effectively entered the guilty plea without close assistance of counsel. (Doc. 48 at 3-4.)

Mr. Saviello's testimony at the MTW Hearing clearly reflects that Mr. Saviello thoroughly reviewed the Plea Agreement with Defendant. Mr. Saviello fully discussed the issue of whether Defendant would be characterized as a "career offender." Mr. Saviello advised Defendant that based on Mr. Saviello's review of Defendant's criminal history, it did not appear that Defendant has been convicted of a prior aggravated assault charge. Based on that belief, Mr. Saviello did not believe Defendant could be characterized as a career offender. However, Mr. Saviello explained to Defendant that the Government believed the career offender characterization did apply to Defendant. Mr. Saviello explained that if the PSR provided for a sentencing enhancement based on a career offender status, Defendant could file an objection to the PSR and a hearing may be required to resolve that issue. Mr. Saviello indicated to Defendant that he thought they would prevail at such a hearing. The Court likewise discussed the possibility that if an objection was filed to the PSR "*and depending on how the Court might rule that could change the advisory guideline range.*" (Doc. 42 at 23:22—24 (emphasis added).) Once again, the Defendant indicated to the Court that he understood that possibility. (*Id.* 23:24—25.)

As reflected in Part I.B. above, the Court conducted a thorough review of the effect of Defendant changing his plea to guilty as to Count Three. Defendant specifically stated, under oath, that he was *not* relying on any assurances or promises outside the Plea Agreement or matters discussed outside those on the record at the CHOP Hearing. When asked whether he had any questions or anything in mind about his rights or how the case would proceed if he pled guilty to Count Three, Defendant testified, "[n]o sir." (*Id.* 35:18—36:1.) Generally, there is a "strong presumption that statements made during a plea colloquy are true." *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994). At no time did Defendant tell the Court that he

7

was relying solely on Mr. Saviello's analysis that Defendant would not be found to be a career offender. He will not be allowed to do so now.

Having fully reviewed the record, including the transcripts of the CHOP and the MTW Hearings, and the arguments and briefs of counsel, the Court finds that Defendant had close assistance of counsel. Counsel's belief regarding Defendant's prior conviction, based on his personal review and analysis though ultimately erroneous, does not alone mean that Defendant did not have close assistance of counsel. Counsel made it clear that the career offender issue might have to be resolved upon objection and possible hearing at sentencing. Therefore, the evidence does not support Defendant's allegation of reliance on Counsel's belief regarding that issue.

### B. Knowing and Voluntary Plea

Defendant contends he did not knowingly and voluntarily enter into his Plea Agreement because Mr. Saviello was incorrect in his analysis of whether Defendant had been convicted of an aggravated assault charge resulting in a longer sentence than anticipated by Defendant. Once again, Defendant's argument totally ignores his own sworn testimony at the CHOP Hearing in which he responded, "*Yes sir*" to each of the following questions from the Court:

- Whether Defendant understood that pleading guilty to Count Three "carries a *minimum* mandatory sentence of five years of imprisonment *and up to a maximum of life imprisonment*." (Doc. 42, CHOP Hrg. Tr. 11:8—18 (emphasis added).)
- Whether Defendant understood that regardless of any estimates given to him by his attorney, the Government, or anyone else, his advisory guideline range of imprisonment could be longer or shorter than what anyone thought at that time and could not be calculated for certain until after his presentence investigation report was completed and rulings made on any objections. (*Id.* 23:9—25.)
- Whether Defendant understood that he could not withdraw his guilty plea because his advisory guideline range of imprisonment turned out to be different than anticipated. (*Id.* 24:1—7.)

Every time the possible term of Defendant's sentence of imprisonment was discussed, the range was a minimum of five years with a *maximum of life imprisonment*. Defendant's assertion that he did not knowingly and voluntarily enter into the Plea Agreement because he now faces a longer prison term than Mr. Saviello's estimated five years, cannot overcome his sworn testimony at the CHOP Hearing. In view of the Court's full explanation and Defendant's

8

acknowledgment, such reason does not constitute "fair and just reason" to permit Defendant to withdraw his plea of guilty. *See United States v. Garcia*, 213 F. App'x 817, 820 (11th Cir. 2007) ("[T]he erroneous predictions by [defendant's] counsel and the government as to [defendant's] guidelines calculations do not provide a "fair and just reason" for withdrawing [defendant's] plea.")

The bottom line is that this Court accepted Defendant's plea of guilty only after conducting a detailed Rule 11 inquiry to ensure his guilty plea was knowing and voluntary. (Doc. 42 at 35:18—37:5.) Ultimately, the Court finds that Defendant's evidence and arguments that he entered his plea of guilty not knowingly or voluntarily, are unconvincing and not supported by the transcripts or relevant record in this case. Thus, Defendant fails to satisfy the second factor.

Because Defendant fails to satisfy the first and second factors and does not present arguments as to the third and fourth factors, the Court need not address the third and fourth factors. *Gonzalez-Mercado*, 808 F.2d at 801. The Government, however, raises the argument that allowing Defendant to withdraw his guilty plea is prejudicial to the Government. The Government states that it has been more than a year since Defendant entered his guilty plea. If the plea is withdrawn, the Government would have to reinitiate contact with witnesses and take other actions that it did not pursue in reliance on the Plea Agreement. The Court finds that this factor weighs in favor of the Government. *See United States v. Wright*, 135 F. App'x 222, 226 (11th Cir. 2005) (court may consider "the time, money, and effort the government would have to devote to reassembling witnesses and evidence that were allowed to scatter after" the guilty plea) (quoting *Buckles*, 843 F.2d at 474)).

### III. CONCLUSION

After full review of the briefs and arguments of counsel and the evidence presented at the hearings held January 11, 2023, on the Motion to Withdraw Guilty Plea and on October 12, 2021, on the Defendant's change of plea hearing, and for the reasons stated below, the Court finds that Defendant's Motion to Withdraw Guilty Plea should be, and is, **DENIED**. Accordingly, Counsel for the Government and Defense Counsel are **ORDERED** to contact

9

the Courtroom Deputy immediately to set the time and date for Defendant's sentencing hearing.

**SO ORDERED**, this 19th day of July 2023.

                                                                                                  **/s/ W. Louis Sands**
                                                                                                  **W. LOUIS SANDS, SR. JUDGE**
                                                                                                  **UNITED STATES DISTRICT COURT**